IN THE UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

CASEY HOLLADAY,

        Plaintiff,

vs.

ROYAL CARIBBEAN CRUISES, LTD.,

        Defendant.

_____/

**COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL**

Plaintiff, CASEY HOLLADAY (hereinafter "Plaintiff"), through undersigned counsel, files suit against Defendant, ROYAL CARIBBEAN CRUISES, LTD., (hereinafter "Defendant"), alleging upon information and belief as follows:

**GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS**

1.      This is an action for damages in excess of the jurisdictional limits of this Court, exclusive of costs and interest. Plaintiff is seeking damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest, costs and attorney's fees. This Court has jurisdiction based on diversity of citizenship 28 U.S.C. § 1332. This action also arises under maritime law such that the Court has admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333;

2. Plaintiff is a citizen of the State of Washington, and Defendant is considered a citizen of the State of Florida. Accordingly, there is diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332;

3. Defendant, ROYAL CARIBBEAN CRUISES, LTD., is a company that has its principle place of business in Miami-Dade County, Florida, operating a passenger cruise ship business, including the operating of the MARINER OF THE SEAS, which is the vessel the Plaintiff was aboard at the time of the incident in question;

4. Plaintiff brings this action in this Court because the passenger ticket issued to the Plaintiff contains a Forum Selection Clause that requires any lawsuits against the Defendant, such as the present lawsuit, to be asserted in the Federal District Court in the Southern District of Florida, excluding any contractual right to file suit in State Court unless the Federal District Court does not have subject matter jurisdiction.  The provision in the passenger ticket states:

> EXCEPT AS PROVIDED IN SECTION 10 (b) WITH REGARD TO CLAIMS OTHER THAN FOR PERSONAL INJURY, ILLNESS OR DEATH OF A PASSENGER , IT IS AGREED BY AND BETWEEN PASSENGER AND CARRIER THAT ALL DISPUTES AND MATTERS WHATSOEVER ARISING UNDER, IN CONNECTION WITH OR INCIDENT TO THIS AGREEMENT, PASSENGER'S CRUISE, CRUISETOUR, LAND TOUR OR TRANSPORT, SHALL BE LITIGATED, IF AT ALL, IN AND BEFORE THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA LOCATED IN MIAMI-DADE COUNTY, FLORIDA, U.S.A., (OR AS TO THOSE LAWSUITS TO WHICH THE FEDERAL COURTS OF THE UNITED STATES LACK SUBJECT MATTER JURISDICTION, BEFORE A COURT LOCATED IN MIAMI-DADE COUNTY, FLORIDA, U.S.A.) TO THE EXCLUSION OF THE COURTS OF ANY OTHER STATE, TERRITORY OR COUNTRY. PASSENGER HEREBY CONSENTS TO JURISDICTION AND WAIVES ANY VENUE OR OTHER OBJECTION THAT HE MAY HAVE TO ANY SUCH ACTION OR PROCEEDING BEING BROUGHT IN THE APPLICABLE COURT LOCATED IN MIAMI-DADE COUNTY, FLORIDA

5. Plaintiff in the instant case is uncertain of his right to invoke the Court's diversity jurisdiction in his at law claim permitted under the Savings to Suitors Clause, 28

U.S.C. 1333. Plaintiff has been a long-term resident of the State of Washington, but recently has moved to Florida with the intention of returning to his home state. If the State of Washington is determined to be his citizenship, then this Court would have diversity jurisdiction over his claims. However, if Plaintiff is deemed to be a citizen of the State of Florida, there would be no diversity jurisdiction as the Defendant, ROYAL CARIBBEAN CRUISES, LTD., is considered a Florida citizen for the purposes of diversity because the principle place of business of the Defendant is in the State of Florida;

6. Although Plaintiff asserts the Court has subject matter jurisdiction by virtue of diversity jurisdiction, and Plaintiff brings this action under 28 U.S.C. § 1332, the Court may determine there is also admiralty subject matter jurisdiction pursuant to 28 U.S.C. § 1333;

7. All times material hereto, the Plaintiff was, and remains a permanent citizen of the State of Washington, but has also maintained a residence in the State of Florida for approximately the past year, with the present intent to return to Washington;

8. At all times material hereto, the Defendant owned, operated, managed, maintained and/or controlled the cruise ship, MARINER OF THE SEAS, and maintained a principle place of business in the State of Florida, specifically Miami, Florida;

9. If diversity jurisdiction does not exist, this Court lacks subject matter jurisdiction over the case in the at law action being brought by Plaintiff, which provides for a right for jury trial;

10. The Forum Selection Clause in the passenger ticket issued to Plaintiff states that Plaintiff may file his action in the State Court when the Federal Court lacks subject matter jurisdiction. In order for the Federal Court to have subject matter jurisdiction Plaintiff would be required to give up his right to file an at law action with the right to a jury trial, and instead

would have to invoke the admiralty jurisdiction of the Federal Court, and would then be denied his right to a jury trial in the at law action he is permitted to bring;

11. Plaintiff is uncertain as to his rights because the Forum Selection Clause says the action can be brought in State Court when the Federal Court lacks subject matter jurisdiction, and the passenger ticket does not contain a waiver of jury trial nor require a passenger to invoke a Federal Court's admiralty jurisdiction. Accordingly, Plaintiff believes if he is determined to be a Florida citizen and the Federal Court lacks subject matter jurisdiction, then this case would fall within the language in the passenger ticket providing for the right to file in State Court;

12. Plaintiff is filing both in State Court and Federal Court out of an abundance of caution to protect his rights to file his at law action with the right to a jury trial, with the concern of the one-year (1) time limitation to file suit against a cruise ship company;

13. Plaintiff asks the Court for immediate declaratory relief in this case to interpret Plaintiff's status for citizenship, determine the subject matter of the Court, interpret the forum selection clause, and determine whether Plaintiff may pursue his action in State Court;

14. Plaintiff asks the Court to interpret the right of the Plaintiff to file in State Court based on the language of the passenger ticket, and declare that the language means where there is no diversity of citizenship, a passenger may file his at law action in State Court as he is entitled to, with the right to a jury trial;

15. Plaintiff is uncertain as to his rights according to the passenger ticket about addressing the situation when a Federal Court does not have subject matter jurisdiction because of lack of diversity, since the cruise line that wrote the ticket would surely know that a passenger's claims for personal injury or death in connection with the passenger ticket would

provide admiralty and maritime jurisdiction in a Federal Court.  Accordingly, Plaintiff believes the language must have been provided by the cruise line to address situations such as this case, where there is no diversity of citizenship and a passenger is unable to bring an at law action in the Federal Court, as that would be the only situation where a passenger's personal injury claims would not provide for subject matter jurisdiction.  If a passenger was required to invoke the admiralty jurisdiction of the Court, the language would be unnecessary;

15. On or about February 9, 2019, at approximately 1:45 p.m., the Plaintiff was engaged in the activity offered onboard the ship referred to as the Sky Pad, a bungee trampoline experience located on the Sports Deck, deck thirteen (13);

16. The Sky Pad is an activity where a participant is positioned on a trampoline, and then fitted with a harness with bungee cords attached on either side, enabling the participant to be able to bounce up and down, reaching significant heights where flips and other acrobatic type activities can be performed.  The participant feels a sense of weightlessness at this time as the harness and bungee cords are used to suspend the participant, lifting and supporting the participant while up in the air;

17. Defendant decided to place this cruise ship activity on the Sports Deck of its cruise ship, which is a hard surface, without any adjacent padding on the surface of the deck nor the use of any type of safety nets in case of a fall;

18. It is important that proper safety practices be implemented with respect to this onboard cruise ship activity in order for it to be safely operated, including following specific safety standards, and as an owner/operator of this activity it was the responsibility of Defendant

Case 1:19-cv-20951-MGC   Document 1   Entered on FLSD Docket 03/12/2019   Page 6 of 16

to oversee the operation of the attraction and prevent and/or take action to prevent any situations that can constitute a safety hazard to the passengers;

19. It was critical that any staff participating in the operational aspects of this attraction be adequately trained, as well as tested to ensure that the proper knowledge had been transmitted and received by the operators;

20. Whenever operating an activity such as this, safety is an issue that Defendant must not compromise, and an issue that needs to be one of the foremost thoughts on the mind of the operator;

21. It was critical that all of the staff read and fully understand the operating manual and operating instructions, including daily maintenance and inspection requirements;

22. It was critical that any guidelines for the operation of the Sky Pad had to be strictly followed by the operator, in this case the operator being Defendant;

23. It was critical for Defendant to do an operational risk assessment for the Sky Pad before operating the activity onboard the cruise ship and offering it to its passengers;

24. It was critical that the bungee cords and any other Sky Pad equipment used be inspected daily for any wear, tear, damage, or deterioration, and to make sure everything was properly assembled for the safety of the passengers;

25. It was critical that all equipment, including the bungee cords and lines, and the harnesses and attachments, be properly maintained, inspected and replaced as required;

26. It was critical that a careful assessment of each participant be made each time in order to determine the proper bungee ropes and tension to utilize;

27. It was critical to properly instruct and supervise each participant while they were using the Sky Pad, and for the individual assigned to do this to have the proper training, knowledge, instructions, and skills to do so;

28. A proper risk assessment would recognize, among other risks, the risk of the participant becoming detached from the harness system, due to failure of a rope, or the elastic bungee cords, or any other event which may cause the individual to become detached. This would then cause the participant to fall, possibly from significant heights, where the participant could potentially miss or bounce off the trampoline, landing on whatever surface the bungee trampoline had been placed on. Accordingly, such a risk assessment would clearly recognize the need to have significant padding placed on the surface of the deck where the trampoline was placed and/or some type of safety net system in case such an event occurred, especially in view of the potential significance of any injury that could occur for the failure to implement such measures, such as serious bodily injury or even death;

29. This particular attraction offered to the passengers was chosen and installed by the Hotel Operations Department of the cruise line;

30. The Hotel Operations Department of the Defendant is a division separate from Marine Operations division of the Defendant;

31. The Hotel Operations Department, and their executives and staff, mostly have backgrounds in areas relating to marketing and customer relations, focusing on the type of attractions most likely to increase passenger ticket sales, and as a result increase profits;

32. Those involved in the decision to offer this attraction onboard a cruise ship, and those involved in the implementation of the installation of the attraction to begin offerings to the

passengers, were not, and are not, appropriately qualified to adequately conduct risk assessments and oversee the operation of the attraction to assure safety risks are properly identified, and properly addressed;

33. In addition, those assigned to the inspections of the attraction in question, and those chosen as operators to oversee the day-to-day operations, were not properly trained or qualified to adequately provide for the safety of the passengers who use the attraction;

34. No warnings were provided to the Plaintiff that indicated the possibility the harness could disengage and cause a person to fall, including the possibility of falling outside the trampoline;

35. Simply stated, Defendant was not, and is not properly qualified and suited to operate attractions, intended for land-based use, on mega cruise ships plying the high seas and encountering all types of elements not typically present on land.

36. Defendant, in total disregard of the safety and lives of its passengers, decided for reasons totally unrelated to safety to add this attraction to its ship, and the accident that happened involving the Plaintiff was a clearly foreseeable type of accident of this attraction, with increased risks of such happening when a cruise ship company's Hotel Operations Department, as here, is in charge of the operational aspects of the attraction;

37. As a result, CASEY HOLLADAY, while fastened to the harness by the operator of the bungee trampoline, an employee of Defendant, and cleared to start engaging in the activity, became unattached from his harness system, while reaching heights of twenty (20) feet or more, when the ropes, bungee cords, winch, and hook, failed, broke, and/or came lose, causing Plaintiff to plunge from a significant height to the hard deck surface outside of the

trampoline, resulting in serious physical injury to the Plaintiff, including life-threatening pelvic fractures and other injuries;

38.  Following the injuries suffered by the Plaintiff, security tried to prevent other passengers from taking videotape evidence of the occurrence and appeared more interested in preventing videotaping than attending to the medical emergency faced by them at the time;

39.  The Plaintiff had to be placed in the ship's medical facility and kept there for many hours until the ship could return to Miami, Florida, at which time the Plaintiff had to be immediately taken by ambulance to the Jackson Trauma Center, where he was admitted, spent approximately ten (10) days, and underwent major surgery in the trauma center;

40.  As a result of the substantial injuries and surgery, the Plaintiff has become disabled, has plates and screws in his pelvic area, and has suffered severe orthopedic injuries which will require lifetime medical care and treatment, including the possibility of multiple future hip replacements.  In addition, the Plaintiff has suffered severe emotional and psychological damages as a result of this incident;

41.  This is a claim for negligence against the Defendant, including a claim for punitive damages for Defendant's willful, wanton and reckless disregard for the safety of its passengers by offering an onboard bungee trampoline with significant safety risks present, including risk of serious physical injury and death;

## **COUNT I**
## **NEGLIGENCE**

42.  Plaintiff reallege, adopts and incorporate by reference the allegations in paragraphs 1 through 41 as though alleged originally herein;

43. At all times material hereto, the Defendant owed a duty to exercise reasonable care under the circumstances to provide a safe voyage to the Plaintiff, including the duty to exercise reasonable care in the operation of any shipboard activities such as the Sky Pad;

44. On or about February 9, 2019, Defendant, acting through its agents, servants, and/or employees, breached its duty to provide Plaintiff with reasonable care under the circumstances, and were negligent as follows:

   a. Failure to follow the operational instructions, procedures, and guidelines for the Sky Pad;

   b. Failure to follow appropriate safety standards pertaining to the operation of the Sky Pad;

   c. Failure to properly train the staff used to operate the Sky Pad;

   d. Failure to properly instruct the staff;

   e. Failure to properly assess the staffs' competence to safely operate the Sky Pad;

   f. Failure to conduct daily inspections of the Sky Pad to check the equipment, including all of the ropes, hooks, bungee cords, and any other parts of the harness system;

   g. Failure to provide any type of padding or safety nets in case a participant did fall and missed the trampoline, or bounced off the trampoline to the surface;

   h. Placing the bungee trampoline on a hard surface where a passenger could suffer serious physical injuries or death if a fall occurred;

i. Operating an activity, such as the Sky Pad, without doing proper risk assessments and determining the safety risks associated with a fall, and then failing address those safety risks and take the appropriate measures.

j. Failure to properly instruct and supervise the Sky Pad on the day in question;

k. Failure of the instructor to follow appropriate procedures and guidelines on the day in question;

l. Failure to properly inspect the bungee cords, ropes, hooks and harness;

m. Failure to have the appropriate skilled individuals involved in the assessment of the safety risks associated with the bungee trampoline activity the Defendant decided to place on the top deck of the cruise ship and operate in the cruise ship environment;

n. Failure to engage in any type of structural system, operational, or safety analysis of the Sky Pad in order to determine its safety.

o. By placing too much focus on customer satisfaction and how to increase sales versus making sure the attractions onboard the ship, including the Sky Pad, could be operated safely.

p. Failure to learn of all the safety risks associated with operation of the Sky Pad and then determining how to eliminate those risks so as not cause injury or even death to any of the participants;

q. The failure to address the safety risks of offering this attraction onboard its ship, including the failure to consider the risk of detachment of the harness system, which could result in a fall where the participant landed outside the

        small trampoline and crashed onto a hard deck surface, is reflective of the Hotel Operations Department of Defendant placing focus on the customer satisfaction aspect of operations and not safety, and as a consequence placed passengers, including Plaintiff, at risk of suffering serious physical injury or even death. The incident in question is illustrative of Defendant's lack of safety awareness for attractions offered by the Hotel Operations Department. To place attractions such as the Sky Pad onboard without proper risk assessments and expertise to determine any safety hazards can only be characterized as a total disregard for the safety and lives of passengers, and such actions were willful and wanton, and punitive damages should be awarded against the Defendant.

r. Failure to properly maintain the Sky Pad, and its associated parts and equipment, in safe condition; and

s. Other negligent acts that will be revealed upon further discovery, including an inspection of the Sky Pad and its associated parts and equipment on the day in question, which Defendant has been notified to preserve as evidence.

45. As a direct result of the negligence of Defendant, the Plaintiff, CASEY HOLLADAY, was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, inconvenience, physical handicap, post-traumatic stress disorder, and other mental and/or nervous disorders, suffered the aggravation of any pre-existing conditions, incurred medical expenses in the care and treatment of his injuries, lost wages in the past and his working ability has been impaired.

Plaintiff, CASEY HOLLADAY, also lost his vacation, cruise, and transportation costs. Further, the injuries resulting from the incident are permanent and continuing in nature, and Plaintiff will continue to suffer these described losses and impairments into the future. Plaintiff will require further medical care and treatment for the remainder of his life;

46. Defendant, a cruise ship operator, should have invested more time and money in addressing and eliminating the risks, as a reasonably prudent cruise ship operator would have done.

47. At all times material hereto, the Defendant was aware of the dangers, and Defendant's failure to properly guard against these severe risks of danger was intentional, willful, wanton, and done with reckless indifference to the lives and safety of the passengers that travel on its cruise ships;

48. Defendant's actions, including those of their agents/employees, were intentional and reckless, and reflects an indifference to the safety of the passengers. The manner in which the Sky Pad was maintained and run can only be described as a reckless endangering of the lives of the participants, indicating a total disregard for their safety;

49. Punitive damages should be assessed against the Defendant to punish Defendant and deter Defendant from continuing with unsafe practices, and hopefully result in the Defendant making the Sky Pad safer for all future passengers who partake in the activity

**WHEREFORE**, Plaintiff, CASEY HOLLADAY, demands judgment against Defendant, ROYAL CARIBBEAN CRUISES, LTD., for compensatory damages, pre-judgment interest and costs, punitive damages and requests a trial by jury of all issues.

## **COUNT II – DECLARATORY RELIEF**

50. Plaintiff reallege, adopt and incorporate by reference the allegations in paragraphs 1 through 41 as though alleged originally herein and further alleges as follows;

51. Defendant issued Plaintiff a passenger ticket, which included the following provision about where any lawsuit had to be filed:

> EXCEPT AS PROVIDED IN SECTION 10 (b) WITH REGARD TO CLAIMS OTHER THAN FOR PERSONAL INJURY, ILLNESS OR DEATH OF A PASSENGER, IT IS AGREED BY AND BETWEEN PASSENGER AND CARRIER THAT ALL DISPUTES AND MATTERS WHATSOEVER ARISING UNDER, IN CONNECTION WITH OR INCIDENT TO THIS AGREEMENT, PASSENGER'S CRUISE, CRUISETOUR, LAND TOUR OR TRANSPORT, SHALL BE LITIGATED, IF AT ALL, IN AND BEFORE THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA LOCATED IN MIAMI-DADE COUNTY, FLORIDA, U.S.A., (OR AS TO THOSE LAWSUITS TO WHICH THE FEDERAL COURTS OF THE UNITED STATES LACK SUBJECT MATTER JURISDICTION, BEFORE A COURT LOCATED IN MIAMI-DADE COUNTY, FLORIDA, U.S.A.) TO THE EXCLUSION OF THE COURTS OF ANY OTHER STATE, TERRITORY OR COUNTRY. PASSENGER HEREBY CONSENTS TO JURISDICTION AND WAIVES ANY VENUE OR OTHER OBJECTION THAT HE MAY HAVE TO ANY SUCH ACTION OR PROCEEDING BEING BROUGHT IN THE APPLICABLE COURT LOCATED IN MIAMI-DADE COUNTY, FLORIDA

52. The Plaintiff considers his permanent residency in the State of Washington, but has been residing in the State of Florida for approximately one year. Plaintiff intends to return to his home state;

53. Defendant has its principal place of business in the State of Florida; therefore, if Plaintiff is considered a citizen of Florida for the purposes of diversity jurisdiction, there is no diversity jurisdiction. The only basis for subject matter jurisdiction would be Admiralty and Maritime jurisdiction, which does not provide for the absolute right to a jury trial. (Plaintiff requests Defendant to stipulate to a jury trial as cruise ship companies typically do in the event Plaintiff is required to pursue his claim in Federal Court under the Court's Admiralty Jurisdiction);

54. Plaintiff is uncertain as to his rights, which depend on where he is considered to be a citizen for purposes of diversity jurisdiction. Plaintiff also is uncertain whether he has the right to maintain his suit in State Court because of additional language Defendant chose to include in the ticket giving passengers the right to file in State Court if the Federal District Court does not have subject matter jurisdiction. The only time the Federal District Court would not have subject matter jurisdiction over a personal injury case brought by a cruise ship passenger would be if the action was at law, and no diversity exists. Thus, Plaintiff is uncertain if the language chosen by Defendant gives a passenger the option to bring a case in State Court if no diversity jurisdiction exists;

**WHEREFORE**, the Plaintiff, seeks declaratory judgment deciding and declaring the parties' rights with respect to the forum Plaintiff may bring this action.

## JURY TRIAL DEMAND/REQUEST

Plaintiff seeks a jury trial as to his claims, as he is entitled to such in an at law claim, and in the event Plaintiff must litigate his case in Federal Court, and if a jury trial is not available as matter of right, Plaintiff requests, pursuant to Federal Rule of Civil Procedure 39, which provides for jury trial upon consent of the parties, consent from the Defendant, and alternatively an advisory jury.

Dated: March 12, 2019.

Respectfully submitted,

By: *s/ Brett Rivkind*
BRETT RIVKIND, ESQ.
FBN: 373486
seainjury@rivkindlaw.com
RIVKIND, MARGULIES & RIVKIND, P.A.
66 West Flagler Street
Suite 700
Miami, FL 33130
Telephone: (305) 374-0565
Facsimile: (305) 539-8341
Attorneys for Plaintiff