UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-20951-CIV-COOKE/GOODMAN

CASEY HOLLADAY,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

    Defendant.

_____/

## ORDER ON DEFENDANT'S WORK PRODUCT ASSERTION

This Order addresses the discoverability of an engineering report ordered and received by a cruise ship operator's in-house counsel after a passenger injured himself on the ship's Sky Pad, an on-board jumping attraction. The cruise ship company has asserted work product protection over that report but dismantled the attraction before Plaintiff or his expert could inspect it. Plaintiff contends the report is not work product in the first place because the primary purpose for the report was not in anticipation of litigation. And he further urges entitlement to the report, even if it is work product, because he meets the "substantial need" or "inability to obtain equivalent evidence" exception. The cruise ship operator rejects those theories and objects to producing the engineering report.

This discovery dispute arises from injuries Plaintiff Casey Holladay sustained while using the Sky Pad attraction aboard Defendant Royal Caribbean Cruises, Ltd.'s *Mariner of the Seas* ship. A participant using the Sky Pad is positioned on a trampoline and then fitted with a harness with bungee cords attached on either side, enabling the participant to bounce up and down. Plaintiff was bouncing on the Sky Pad when he became unattached from the harness system after the bungee equipment failed, causing him to fall on the hard deck surface next to the trampoline. The fall resulted in physical injury to the Plaintiff, including pelvic fractures.

After filing this lawsuit against Royal Caribbean, Plaintiff propounded discovery and requested the production of documents relating to Plaintiff's fall from the Sky Pad. Royal Caribbean provided Plaintiff with a portion of the requested documents and a privilege log, asserting the work product exception to discovery over certain documents. It also asserted the attorney-client privilege to some emails.

The Undersigned held a hearing on the parties' discovery dispute. [ECF Nos. 18; 19]. At the Discovery Hearing, Plaintiff sought the production of documents with a work product "privilege"[1] designation on Royal Caribbean's Second Amended Privilege Log.

---

[1] Unlike the attorney-client privilege, which is, in fact, a privilege, the work product theory is not technically a *privilege;* it is a doctrine, codified in Federal Rule of Civil Procedure 26(b)(3). *See generally Hickman v. Taylor*, 329 U.S. 495, 509-10 & n. 9 (1947) (explaining that work product protection is not a "privilege" as that term is used in the law of evidence or the civil procedure rules, but noting that English courts treat the doctrine as a privilege).

The Undersigned ordered Royal Caribbean to submit a copy of the contested documents under seal for an *in-camera* inspection. [ECF No. 20]. Currently at issue is whether the SEA, Ltd. ("SEA") Sky Pad Evaluation Report (the "SEA Report") constitutes protected work product and should remain protected from production to Plaintiff. The SEA Report is the subject of Plaintiff's motion to compel. [ECF Nos. 32; 41].

The Undersigned analyzed the SEA Report to determine whether it was properly designated as a protected work product document. [ECF Nos. 21; 22; 24; 25].

Along with the Report, Royal Caribbean submitted the affidavit of Paul Hehir, a Royal Caribbean attorney who stated that Royal Caribbean "retained Bryan Emond from SEA, Ltd. . . . to inspect the Sky Pad and to provide Royal Caribbean with a report of his findings and opinions . . . as his findings and opinions would help defend the company from the litigation that Royal Caribbean anticipated would ensue after Plaintiff's incident." Hehir Affidavit at ¶¶ 8, 10-11.

Plaintiff then submitted the Affidavit of Donald McPherson, Plaintiff's liability expert, who explained that it is impossible for him to adequately inspect the Sky Pad on the *Mariner of the Seas* because the attraction has been disassembled. [ECF No. 28-1, p. 3]. He stated that while he has been able to "inspect certain parts and equipment of the Sky Pad that had been removed from the ship and was made available at the offices of Defense Counsel," some portions of the Sky Pad equipment "were not made available at the offices of the defense counsel when I conducted my inspection." *Id.* at pp. 3, 5-6.

3

McPherson attested that it is "not possible to obtain the same information" contained in the SEA Report because "Defendant had total access to all of the parts and equipment and information Defendant obtained promptly after the incident in question, whereas the Plaintiff did not have the benefit of the same information." *Id.* at p. 6.

In response, Royal Caribbean submitted the affidavit of its engineering expert, Brian Mills, who explained that the "[r]esponses to Plaintiff's Interrogatories, engineering schematics of the Sky Pad, Eurobungy manuals, Sky Pad maintenance documents, Sky Pad training documents, photos of the Sky Pad and its parts after the incident, and CCTV footage of the incident" are sufficient for Plaintiff to be able to replicate the same results from the SEA Report. [ECF No. 37-1, p. 2]. Mills attested that "[t]he documents and materials made available to Plaintiff provide enough information to make an evaluation of the Sky Pad as it existed on the date of the incident and to determine how the incident occurred." *Id*.

The Undersigned ordered the parties to each submit a brief memorandum of law discussing whether Plaintiff has shown a substantial need for the SEA Report under Federal Rule of Civil Procedure 26(b)(3)(A)(ii). [ECF No. 38]. The parties filed their respective memoranda. [ECF Nos. 42; 44].

After careful consideration of the parties' submissions, the relevant authority, and the SEA Report, and for the reasons discussed in greater detail below, the Undersigned **grants** Plaintiff's request and directs Royal Caribbean to produce a copy of the SEA

Report to Plaintiff's counsel within five (5) business days.

## I. **Applicable Legal Principles**

"The attorney work-product privilege traces its roots to the recognition by the Supreme Court, in *Hickman v. Taylor*, 329 U.S. 495, 510-11, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947), that 'it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *Cox v. Admn'r U.S. Steel & Carnegie,* 17 F.3d 1386, 1421 (11th Cir. 1994), *opinion modified on reh'g on other grounds*, 30 F.3d 1347 (11th Cir. 1994); *see also United Kingdom v. United States*, 238 F.3d 1312, 1321 (11th Cir. 2001) ("The work-product doctrine reflects the strong 'public policy underlying the orderly prosecution and defense of claims.'"). That public policy has been codified and is now governed by the principles set forth in Federal Rule of Civil Procedure 26(b)(3)(A), which reads in pertinent part:

> *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared **in anticipation of litigation or for trial** by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).

Fed. R. Civ. P. 26(b)(3)(A) (emphasis added).

Before determining whether the Undersigned should sustain Royal Caribbean's work product assertion over the SEA Report, the Undersigned will first outline the relevant legal principles underlying the work product doctrine.

First, federal law governs work product assertions. *See, e.g., Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 699-700 (S.D. Fla. 2007); *see also Frontier Ref., Inc. v. Gorman-Rupp*

5

*Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998) (stating that, "[u]nlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)").

Second, "district courts are entitled to **broad discretion** in managing pretrial discovery matters." *Perez v. Miami-Dade Cty.*, 297 F.3d 1255, 1263 (11th Cir. 2002) (emphasis added). This discretion extends to rulings concerning the applicability of the work product doctrine. *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1188 (11th Cir. 2013).

Third, the party claiming work product immunity always has the burden to establish the claimed protection. *Hinchee*, 741 F.3d 1185 at 189; *Milinazzo*, 247 F.R.D. at 698.

Fourth, a party must anticipate litigation **at the time the documents were created** for the protection to apply. *Milinazzo,* 247 F.R.D. at 698.

Fifth, the Court must determine when the document was created and *why* it was created. *Id.* In fact, "in determining whether a document was made in anticipation of litigation, the primary focus is the reason or **purpose for creating the document**." *Place St. Michel, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 06-21817-CIV, 2007 WL 1059561, at *2 (S.D. Fla. Apr. 4, 2007) (emphasis added) (quoting *Guidry v. Jen Marine LLC,* No. Civ. A 03-0018, 2003 WL 22038377, at *2 (E.D. La. Aug. 22, 2003)).

Sixth, the party claiming a privilege must provide the Court with underlying facts demonstrating the existence of the privilege, which may be accomplished by affidavit.

6

*Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 639 (S.D. Fla. 2011). In other words, "the onus is on the party claiming immunity to provide competent **evidence** that the materials in question were created in anticipation of litigation." *Place St. Michel*, 2007 WL 1059561, at *3 (emphasis added). However, the mere fact that the party seeking work product protection submits an affidavit (which was done here) is not necessarily sufficient to sustain the work product assertion. *See, e.g., Fid. Nat'l Title Ins. Co. v. Wells Fargo Bank, N.A.*, No. 12-22437, 2013 WL 12138558, at *2 (S.D. Fla. July 19, 2013) (noting that plaintiff submitted an affidavit but finding it "wholly conclusory and [with] few details to substantiate her claim that 'Notes' were created 'in anticipation of litigation'").

Seventh, there are exceptions to the work product doctrine. Factual work product may be subject to discovery upon the showing of a "substantial need" and the inability to obtain substantially equivalent evidence by other means without undue hardship. *See Burrow v. Forjas Taurus S.A.*, 334 F. Supp. 3d 1222, 1229 (S.D. Fla. 2018). "A non-exhaustive list of factors are assessed in determining substantial need including: (1) the importance of the materials to the party seeking them for case preparation, (2) the difficulty the party will have obtaining them by other means, and (3) the likelihood that the party, even if he obtains the information by independent means, will not have the substantial equivalent of the documents he seeks." *Id.* at 1230 (citing Fed. R. Civ. P. 26 advisory committee's note to 1970 amendment).

**II.     Analysis**

The SEA Report, which was sent to the attention of Royal Caribbean's Associate Vice President of Litigation, Paul Hehir, is titled "Sky Pad Evaluation," with "Injured Party: Mr. Casey Holladay." [ECF No. 21]. The Report was commissioned on March 7, 2019, five days before Plaintiff filed his Complaint, and the Report was issued to Royal Caribbean on March 28, 2019. *Id.*

Plaintiff contends that the SEA Report involves non-privileged (i.e., non-work product) **business** advice, and that the Report was prepared to determine the cause of the accident to better protect against *future* incidents, rather than created in anticipation of litigation. [ECF No. 42]. Plaintiff claims that Royal Caribbean recently produced emails showing that it "was aware of serious safety concerns with the Sky Pad prior to the accident of the Plaintiff and did nothing about it despite the identifiable risk of serious injury or death." *Id.* at p. 2. Plaintiff also argues that Royal Caribbean's employee in charge of safety on the Sky Pad, Manual Vasquez, testified in his deposition that the SEA Report was commissioned for the purpose of "loss prevention," "reducing financial impacts of the company from injuries," and to "avoid injuries to passengers or crew." *Id.* at pp. 3-4. Finally, Plaintiff argues that Plaintiff is entitled to the factual work product and technical information contained in the SEA Report under the "substantial need" exception to the work product doctrine since Plaintiff "cannot duplicate such, even with undue hardship." *Id.* at p. 5.

8

Mr. McPherson, Plaintiff's liability expert, similarly argues in his affidavit that he is unable to recreate the information contained in the technical, fact-specific SEA Report since the Sky Pad was completely disassembled, certain equipment is missing, and Plaintiff lacks the ability to inspect the Sky Pad in the condition it was in after the subject incident occurred. [ECF No. 28-1, p. 3].

In its opposition to Plaintiff's motion to compel [ECF No. 44], Royal Caribbean argues that Brian Emond of SEA was hired as a consulting expert for this litigation (so the SEA Report is protected by the work product doctrine). [ECF No. 44, p. 1]. Moreover, Royal Caribbean asserts that professional engineer Brian Mills found that "the documents and materials made available to Plaintiff through discovery are sufficient to determine how the incident took place." *Id.*; [ECF No. 37-1]. Because the materials and equipment were made available to Plaintiff, Royal Caribbean argues, the "'exceptional circumstances" threshold is not met because the expert for the party seeking production has the opportunity to investigate the material," and the produced discovery is sufficient to evaluate the "Sky Pad on as it existed on the date of the incident and to determine how the incident occurred." [ECF No. 44, p. 3].

The Undersigned analyzed the SEA Report, the competing affidavits, and the parties' respective memoranda regarding the "substantial need" exception to Federal Rule of Civil Procedure 26(b)(3)(A)(ii).

The first threshold issue is whether the SEA Report is in fact work product. This is

9

a thorny issue.

Royal Caribbean asserts, through the Affidavit of Paul Hehir, its associate vice president of litigation, that the "primary motivation for retaining" Emond and SEA was to "defend the company from the litigation that Royal Caribbean anticipated would ensue after Plaintiff's incident." Hehir Affidavit, ¶ 11. At the hearing, Royal Caribbean argued that although *a* purpose of the Report appears to concern the future use of the Sky Pad and possible improvement, the **primary purpose** is for Holladay's anticipated litigation, so the Report is subject to the work product doctrine. *See, e.g., United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981) (holding that a document is deserving of work product protection "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.").

In contrast, Plaintiff argues that the SEA Report is not protected by the work product doctrine because the primary purpose of it was a **business** purpose, it contains factual work product, and it potentially shows Royal Caribbean's knowledge of the Sky Pad's risk of danger. [ECF No. 42, pp. 2-4]; *Resolution Trust Corp. v. Heiserman*, 151 F.R.D. 367, 375 (D. Colo. 1993) ("[I]t is beyond dispute that the defendants need the information requested. It contains the evidence upon which RTC bases its complaint.").

Although Mr. Hehir is an attorney, Plaintiff emphasizes that he works in Royal Caribbean's Risk Management/Loss Prevention Department, as opposed to its Legal Department. Plaintiff argues that this department is a business-oriented department and

notes that Mr. Vasquez works in the same department.

Moreover, Plaintiff argues that he has a substantial need for the SEA Report and cannot, even with undue hardship, recreate the technical nature of the SEA Report because the Sky Pad was disassembled, equipment is missing, and Plaintiff cannot inspect the Sky Pad in the state it was in after Plaintiff's accident since it has been disassembled and relocated to defense counsel's office. [ECF No. 42, pp. 4-6; 28-1, p. 3].

While the determination of whether the SEA Report is protected by the work product doctrine is a close call, the Undersigned does not need to grapple further with that dicey issue and then reach a less-than-completely-confident conclusion (about whether a desire to avoid future injuries was the primary purpose for the report or only **a** purpose) because Plaintiff has demonstrated a substantial need for the Report and an inability to obtain a substantial equivalent even with undue hardship.

Plaintiff satisfies the three factors used to assess substantial need:

> (1) the importance of the materials to the party seeking them for case preparation, (2) the difficulty the party will have obtaining them by other means, and (3) the likelihood that the party, even if he obtains the information by independent means, will not have the substantial equivalent of the documents he seeks.

*Burrow*, 334 F. Supp. 3d at 1229 (citing *FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 155 (D.C. Cir. 2015)) ("[A] moving party's burden is generally met if it demonstrates that the materials are relevant to the case, the materials have a unique value apart from those already in the movant's possession, and 'special circumstances' excuse the

11

movant's failure to obtain the requested materials itself.").

Here, Plaintiff seeks the SEA Report to determine how his injury-generating fall occurred, information regarding the failure of the equipment, and whether Royal Caribbean had any knowledge of the risks posed by the Sky Pad. The importance of this technical information is necessary because it "contains the evidence upon which [Plaintiff] bases [his] complaint." *Burrow*, 334 F. Supp. 3d at 1230 (citing *Heiserman*, 151 F.R.D. at 375). All of Plaintiff's allegations relate to the failure of the Sky Pad equipment leading to the subject incident, which satisfies the first factor to overcome the work product doctrine. *Burrow*, 334 F. Supp. 3d at 1230.

Concerning the second and third factors, the Undersigned cannot conceive that an incomplete inventory of equipment from the disassembled Sky Pad relocated to defense counsel's office is a substitute for examining the Sky Pad aboard the ship in the condition it was in after Plaintiff's fall. The highly technical engineering information can be found only within the SEA Report, which Defendant's expert created after inspecting the Sky Pad onboard the ship after Plaintiff fell from the ride/attraction. *Burrow*, 334 F. Supp. 3d at 1230 (citing *Foley v. Juron Assocs.*, No. 82-0519, 1986 WL 5557, at *2 (E.D. Pa. May 13, 1986)) (ordering production of engineering reports since "[t]he knowledge acquired from the [engineering] reports can realistically be shown only by the facts contained in the documents themselves").

Plaintiff has no other way to acquire the same information that Royal Caribbean

obtained because the Sky Pad is no longer intact and in the same condition it was in after Plaintiff's accident. The Undersigned is not convinced that Defendant's interrogatory responses, Eurobungy manual, Sky Pad training documents, photos of the Sky Pad and its parts after the incident, CCTV footage of the incident, and incomplete/disassembled Sky Pad equipment can provide Plaintiff with a substantial equivalent to the highly technical information contained in the SEA Report.

### III. Conclusion

For the foregoing reasons, the Undersigned **grants** Plaintiff's motion to compel the SEA Report under the "substantial need" exception to the work product protection found in Federal Rule of Civil Procedure 26(b)(3)(A)(ii). Royal Caribbean shall produce a copy of the SEA Report to Plaintiff within five (5) business days.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on October 7, 2019.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Marcia G. Cooke
All counsel of record