**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 19-20951-CIV-GOODMAN
(CONSENT CASE)**

CASEY HOLLADAY,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

    Defendant.
_____/

**SECOND ORDER ON DEFENDANT'S WORK PRODUCT ASSERTION
(FOR CELTIC ENGINEERING DRAFT REPORT)**

For the second time in this personal injury case, the Court assesses the discoverability of an engineering report ordered and received by a cruise ship operator's in-house counsel after a passenger injured himself on the ship's Sky Pad, an on-board jumping attraction. Earlier in this litigation, the Court ordered [ECF No. 46] the Defendant cruise ship company to produce another report from a different engineering firm (i.e., SEA Ltd.) because of an exception to the work product doctrine: Plaintiff's substantial need for the report (because Defendant Royal Caribbean Cruises, Ltd. had dismantled the attraction before Plaintiff or his expert could inspect it) and his inability to obtain substantially equivalent discovery by other means without undue hardship.

Plaintiff contends the report at issue (i.e., a "draft" report from Celtic Engineering, Inc.) is not work product in the first place because the primary purpose for the report was not in anticipation of litigation. Royal Caribbean filed the Celtic Draft Report under seal [ECF No. 67] and the Undersigned reviewed it *in camera* (and compared it to the SEA report).

As explained in the earlier Order [*Holladay v. Royal Caribbean Cruises, Ltd.*, No. 19-20951, 2019 WL 4929915, ___ F.R.D. ___ (S.D. Fla. October 7, 2019)], this case concerns injuries which Plaintiff Casey Holladay sustained while using the Sky Pad attraction aboard Royal Caribbean's *Mariner of the Seas* ship. A participant using the Sky Pad is positioned on a trampoline and then fitted with a harness with bungee cords attached on either side, enabling the participant to bounce up and down. Plaintiff was bouncing on the Sky Pad when he became unattached from the harness system after the bungee equipment failed, causing him to fall on the hard deck surface next to the trampoline. The fall resulted in physical injury to the Plaintiff, including pelvic fractures.

The parties submitted memoranda of law. [ECF Nos. 71-72].

Royal Caribbean contends that the Celtic Draft Report is protected by the work product doctrine because it engaged Celtic to prepare the report as a consulting expert and the report was prepared in anticipation of litigation. Royal Caribbean says it hired both SEA and Celtic to evaluate the Sky Pad bungee "in order to determine how the incident occurred." [ECF No. 72, p. 2]. The Undersigned had no need to earlier determine

whether the SEA Report is entitled to work product protection because, even if it is protected, Royal Caribbean would still have to produce it under the substantial need exception.

Plaintiff argues that the Celtic Draft Report is not entitled to work product protection because (1) Royal Caribbean regularly uses Celtic as its engineering firm; (2) it arranged for Celtic to review the Sky Pad before the incident; (3) Royal Caribbean produced the first, pre-incident report; (4) Celtic's post-incident assessment was simply a continuation of its ongoing business relationship with Royal Caribbean for business purposes; and (5) the Draft Report was prepared in the ordinary course of business in order to improve the attraction's overall performance, protect future passengers from potential harm and protect the long-term interests of the company.

I. Applicable Legal Standards

Several legal principles govern the issue of whether the Celtic Draft Report is in fact work product:

First, federal law governs work product assertions. *See, e.g.*, *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 699-700 (S.D. Fla. 2007); *see also Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998) (stating that, "[u]nlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)").

Second, "district courts are entitled to **broad discretion** in managing pretrial

3

discovery matters." *Perez v. Miami-Dade Cty.*, 297 F.3d 1255, 1263 (11th Cir. 2002) (emphasis added). This discretion extends to rulings concerning the applicability of the work product doctrine. *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1188 (11th Cir. 2013).

Third, the party claiming work product immunity always has the burden to establish the claimed protection. *Hinchee*, 741 F.3d 1185 at 189; *Milinazzo*, 247 F.R.D. at 698. More significantly, "[t]his burden, to sustain a claim of privilege, is heavy because privileges are 'not lightly created nor expansively construed, for they are in derogation of the search for the truth.'" *Id.* (citing *U.S. v. Nixon*, 418 U.S. 683, 710 (1974)). Therefore, Royal Caribbean has the burden to establish its work product claim over the Celtic Draft Report.

Fourth, a party must anticipate litigation **at the time the documents were created** for the protection to apply. *Milinazzo*, 247 F.R.D. at 698.

Fifth, the Court must determine when the document was created and *why* it was created. *Id.* In fact, "in determining whether a document was made in anticipation of litigation, the primary focus is the reason or **purpose for creating the document**." *Place St. Michel, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 06-21817-CIV, 2007 WL 1059561, at *2 (S.D. Fla. Apr. 4, 2007) (emphasis added) (quoting *Guidry v. Jen Marine LLC*, No. Civ. A 03-0018, 2003 WL 22038377, at *2 (E.D. La. Aug. 22, 2003)).

Sixth, litigation need not be imminent "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *United States*

4

*v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981). Under the primary purpose test, a document is deserving of work product protection "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Id.*

Seventh, under the dual purpose test, which the Eleventh Circuit Court of Appeals has not expressly adopted, dual-purpose documents are protected from disclosure "if, 'taking into account the facts surrounding their creation, their litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole.'" *Developers Sur. & Indem.*, 2007 WL 2021939, at *2 (quoting *In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th Cir. 2004)). Thus, "'dual purpose' documents created because of the prospect of litigation can be protected even though a non-litigation purpose can also be ascertained." Wright, Miller & Kane, 8 Fed. Prac. & Proc. § 2024 (3d ed. 2010). While the test is straightforward, "the analysis is more complicated." *In re Grand Jury Subpoena*, 357 F.3d at 908.

Eighth, the Undersigned has already (in another case) noted the lack of binding authority in our Circuit and outlined the myriad factors which come into play when there is more than one purpose for the creation of a document. Specifically, in *Goosby v. Branch Banking & Trust Co.*, 309 F. Supp. 3d 1223, 1234-36 (S.D. Fla. April 17, 2018), the Undersigned flagged several points about a work product assertion arising in a multi-purpose scenario and pinpointed the different tests used by the courts (in addition to the dual purpose test). I will quote the applicable language from that opinion here:

"In addition to using the primary purpose and dual-purpose tests, other courts have sometimes used other tests, such as the 'because of' test. Under that test, material used for business purposes does not lose work product protection if it 'was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation.'" *United States v. Adlman*, 134 F.3d 1194, 1195, 1199 (2d Cir. 1998) (rejecting primary purpose rule as being "at odds with the text and policies" of Rule 26 and explaining that "the policies underlying the work-product doctrine suggest strongly that work-product protection should not be denied to a document that analyzes expected litigation merely because it is prepared to assist in a business decision"); *see also U.S. v. Deloitte LLP*, 610 F.3d 129, 138 (D.C. Cir. 2010) ("Under the more lenient 'because of' test, material generated in anticipation of litigation may **also** be used for **ordinary business purposes** without losing its protected status.") (emphasis added).

Some courts appear to use a "sole purpose" test, such as the analysis used in *Judicial Watch, Inc. v. U.S. Department of Homeland Security*, 926 F. Supp. 2d 121 (D.D.C. 2013), where the Court held that the work product proponent "bears the burden of showing that the documents were prepared for the purpose of assisting an attorney in preparing for litigation, and **not some other reason**." *Id.* at 138 (emphasis added and internal quotations omitted).

In the Eleventh Circuit, contrary to most circuits (which follow the "because of"

test), district courts have mostly either used the primary purpose or dual purpose test.

Either way, the Eleventh Circuit has not established a definitive test for courts to follow. *Regions Fin. Corp. v. U.S.*, No. 2:06-CV-00895-RDP, 2008 WL 2139008, at *3 (N.D. Ala. May 8, 2008) (stating "no binding Fifth or Eleventh Circuit decision clearly adopts the 'primary motivating purpose' test"); *see also In re Blue Cross Blue Shield Antitrust Litig. (MDL No.: 2406)*, No. 2:13-CV-20000-RDP, 2015 WL 10891632, at *6 (N.D. Ala. Nov. 4, 2015) ("In fact, it appears the Eleventh Circuit has never formally adopted *any* test for assessing the scope of the work product privilege."); *Cooper v. Old River Supply, Inc.*, No. 3:10-CV-01495-JEO, 2012 WL 13027261, at *3 (N.D. Ala. May 18, 2012) ("The Eleventh Circuit has not addressed the standard to apply when determining whether a document was prepared in anticipation of litigation."); *c.f. Tillman v. C.R. Bard, Inc.*, No. 3:13-CV-222-J-34JBT, 2015 WL 1062182, at *3 (M.D. Fla. Mar. 11, 2015) (observing that "some district courts within the Eleventh Circuit have moved away from applying the 'primary purpose' test" but then noting that "[n]onetheless, the Eleventh Circuit Court of Appeals has not considered the issue"); *Colardo–Keen v. Rockdale Cty., Georgia*, No. 1:14-CV-489-MHC, 2017 WL 4422349, at *1 (N.D. Ga. May 16, 2017) ("The Eleventh Circuit has not decided which test applies [i.e., the "primary purpose" test or the "because of" test], and district courts within this Circuit have applied both tests.").

Rendering the analysis more complicated, courts have not always been uniform in the terminology they have used. For example, some courts use the terms "because of"

7

and "dual purpose" interchangeably. *See Spirit Master Funding, LLC v. Pike Nurseries Acquisition, LLC*, 287 F.R.D. 680, 685 (N.D. Ga. 2012) ("[I]t is now well recognized that documents that serve a dual purpose are covered by the work product protection if they were produced with the motivating purpose for or because of anticipated litigation.") (internal quotations omitted).

And, to add yet another factor into the equation, some district courts in our Circuit have adopted a variation on the "**primary purpose**" test and authorize **work product** protection when "'**at least *one*** of the principal purposes for generating' the materials was to aid in possible future litigation." *Dewit v. UPS Ground Freight, Inc.*, No. 1:16CV36-MW/GRJ, 2017 WL 3000029, at *1 (N.D. Fla. May 30, 2017) (emphasis added) (quoting *Eisenberg v. Carnival Corp.*, No. 07-22058-CIV, 2008 WL 2946029, at *2 (S.D. Fla. July 7, 2008)).

Moreover, the evaluation of a work product claim is rendered more problematic by the Official Committee Notes to Rule 26(b)(3) (concerning the 1970 Amendment), which provide that materials prepared "in the ordinary course of business or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes," are not protected.

Some courts in our Circuit seem to hold that a document prepared in the ordinary course of business can **never** be entitled to work product protection. *Holbourn v. NCL (Bahamas) Ltd.*, 305 F.R.D. 685, 687 (S.D. Fla. 2014) ("[M]aterials or documents drafted or

8

created in the ordinary course of business are not protected."). Other courts do not take such an all-or-nothing approach. *See, e.g.*, *Adams v. City of Montgomery*, 282 F.R.D. 627, 634 (M.D. Ala. 2012) (holding that documents were protected work product because they "had a dual purpose: They were prepared pursuant to the city's policy of investigation, but also, specifically, with an eye to this anticipated litigation.").

And other courts, including out-of-circuit appellate courts, have upheld the protection of documents that might be deemed to have been prepared in the ordinary course of business. Thus, in *United States v. Adlman*, the Court interpreted the ordinary-course-of-business exception to indicate that a document is eligible for work product protection if it "would not have been prepared in **substantially similar form** but for the prospect of that litigation." 134 F.3d at 1195 (emphasis added); *see also Goosby*, 309 F. Supp. 3d at 1234.

Given this uncertainty, the Undersigned will follow the same approach I used in *Goosby*: to **not** adopt a specific test with a particular name and to confine the ruling to the unique facts of this specific fact pattern.

Ninth, the party claiming a privilege must provide the Court with underlying facts demonstrating the existence of the privilege, which may be accomplished by affidavit. *Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 639 (S.D. Fla. 2011). In other words, "the onus is on the party claiming immunity to provide competent **evidence** that the materials in question were created in anticipation of litigation." *Place St. Michel*, 2007 WL 1059561,

9

at *3 (emphasis added). However, the mere fact that the party seeking work product protection submits an affidavit (which was not done here for the document in question, the Celtic Draft Report) is not necessarily sufficient to sustain the work product assertion. *See, e.g.*, *Fid. Nat'l Title Ins. Co. v. Wells Fargo Bank, N.A.*, No. 12-22437, 2013 WL 12138558, at *2 (S.D. Fla. July 19, 2013) (noting that plaintiff submitted an affidavit but finding it "wholly conclusory and [with] few details to substantiate her claim that 'Notes' were created 'in anticipation of litigation'").

II.  Analysis

When comparing the Celtic Draft Report to the SEA Sky Pad Evaluation Report, the SEA Report's cover page expressly identified Holladay as the "**injured party**." [ECF No. 21, p. 2]. It mentions that the "Sky Pad entertainment system" is the "location of **loss**." *Id*. The "Project Assignment" paragraph explains that SEA was "asked to evaluate recreational equipment that was **involved in an accident** that occurred onboard the *Mariner of the Seas*." *Id.* at p. 4. It also notes that while Holladay was using the system, "one of the static lines from which he was suspended failed, **causing him to fall** and land on the deck." *Id*. This section also notes that Holladay "received **injuries** as a result of his fall." *Id*. (emphasis added).

Moreover, the "Scope of Project" section of the SEA Report explains that SEA was "asked to consult with **respect to this accident** including a determination whether there are any engineering or operational safety issues." *Id*. (emphasis added).

So, it's clear that the SEA project was focused on Holladay's fall and injuries. Thus, it appears far more akin to a traditional work product document than the Celtic Draft Report. Royal Caribbean retained SEA five days before the lawsuit was filed.

In contrast, the Celtic Draft Report mentions nothing about an incident, a fall, injuries, or Holladay. Although its "Overview" mentions that the Sky Pad was "closed during the entire duration of the visit" (by Celtic engineers), it does not expressly say or even implicitly suggest *why* the attraction was closed. It does not say that the project concerned Holladay's fall, nor does it mention that the equipment caused an injury.

Instead, it simply mentions that the scope of work "includes in field condition survey of the Sky Pad on the Mariner of the Seas *and* Independence of the Seas." (emphasis added). There is no mention of any incident, litigation or threatened litigation over the Sky Pad attraction on the other ship (i.e., the *Independence of the Seas*). Nor does it mention threatened litigation or a Royal Caribbean concern over imminent litigation involving Holladay's fall on the *Mariner of the Seas*.

Royal Caribbean has not explained why, if the primary purpose of Celtic's retention was to prepare for anticipated litigation, Celtic would have been asked to evaluate an attraction on a *second* ship where **no** incident was reported.

Given the complete lack of reference in the Overview to litigation, threatened litigation, a fall, an injury or even an incident involving the attraction, it is no surprise that the Celtic Overview says that the Draft Report "is not meant as a comprehensive

11

assessment of the structural integrity of the attraction, but rather a depiction of the **typical** types of deficiencies of the accessible portions of the attraction while on board." (emphasis added). This language seems consistent with a non-litigation purpose flowing from another project given to an engineering firm with which Royal Caribbean has an ongoing relationship. On the other hand, this phrasing does not expressly support the notion that Celtic's retention was in connection with this lawsuit or a legitimate concern over litigation.

In addition, in a deposition, a Royal Caribbean Rule 30(b)(6) witness, Amanda Campos, identified SEA and XTR as two companies who determined the cause of the rope breaking on the Sky Pad attraction but did not mention Celtic as a company retained for litigation purposes. According to Ms. Campos, XTR handles the maintenance for the Sky Pad attraction. [*See* Amanda Campos Deposition Tr., pp. 27-31].[1]

Although Royal Caribbean submitted an affidavit in support of its effort to assert work product over the SEA Report, it did not provide one for the circumstances surrounding the Celtic Draft Report at issue here. Instead, it merely announced, in a memorandum, that "Royal Caribbean asked Celtic to conduct a post-incident assessment in anticipation of litigation." [ECF No. 72, p. 1]. This contrasts sharply with the Affidavit

---

[1] The Campos deposition transcript was submitted to the Court's e-file inbox as background materials for the discovery hearing concerning the SEA Report. It has not yet been filed on the Court's CM/ECF system. In order to generate a complete record of the basis of the Court's ruling, Plaintiff shall file the transcript on CM/ECF on or before January 24, 2020.

of Paul Hehir, a Royal Caribbean attorney, who explained that the cruise ship operator retained SEA to "inspect the Sky Pad and to provide Royal Caribbean with a report of his findings and opinions . . . as his findings and opinions would help defend the company from the litigation that Royal Caribbean anticipated would ensue after Plaintiff's incident." Hehir Affidavit at ¶¶ 8, 10-11.

Thus, there is a marked difference between the circumstances underlying the preparation of the SEA Report (for which the Undersigned never reached a conclusion about whether the document was even a work product document in the first place) and those surrounding the Celtic report.

Royal Caribbean also contends that the Celtic Draft Report is most certainly covered by the work product doctrine because it is a *draft*.[2] According to Royal Caribbean, "draft repots (sic) are protected from disclosure by the work product doctrine." [ECF No. 72, p. 2]. In other words, Royal Caribbean is advancing an argument broader than one

---

[2]   Royal Caribbean has not explained whether Celtic ever prepared a *final* version of the report it designated as a draft. At a minimum, it certainly has not *claimed* to the Court to be in possession of a final report or a later version of the Draft Report. Despite this omission, Royal Caribbean argues that producing the Celtic Draft Report "*may* confuse the issues in this case because the draft *may* not reflect Celtic's finalized opinions." [ECF No. 72, p. 6 (emphasis added)]. But Royal Caribbean should *know* whether Celtic issued a final report and, if it did, whether the final opinions are any different than the ones in the Draft Report. Thus, it seems probable that Celtic never issued a later version of the Draft Report or, if it did, it did not materially differ from the Draft. But the Undersigned is not basing my decision on assumptions about a potential later version of the report. Instead, I view the failure to provide more detail about the purported concern over possible differences between a draft report and a theoretical later version to be a factor in assessing whether Royal Caribbean sustained its burden.

13

noting that a draft document *can* be work product protected -- if it meets the other requirements of the doctrine. For all practical purposes, Royal Caribbean argues that any draft document is protected by the work product doctrine simply and solely by virtue of its status as a *draft* version, regardless of whether the document meets the other requirements.

Specifically, Royal Caribbean boldly proclaims that "draft reports, **regardless** of the form in which they are recorded, are protected by the work product doctrine." [ECF No. 72, p. 5 (emphasis added)]. The Undersigned disagrees.

Royal Caribbean has not cited any legal authority to support its sweeping proclamation that *every* draft document is entitled to work product protection simply because it is called a draft. The caselaw authority it cites does not support this novel theory.

To be sure, Federal Rule of Civil Procedure 26(b)(4)(B) provides that "Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded." But Rule 26(a)(2) concerns the obligation to provide a written report prepared and signed by an expert witness "retained or specially employed to provide expert testimony in the case or whose duties as the party's employee regularly involve giving expert testimony."

Royal Caribbean is ignoring the all-important fact that this rule concerns **testifying experts**. It does not concern experts like Celtic, who Royal Caribbean says is not a

testifying expert. If Royal Caribbean had retained Celtic to be a testifying expert, then it would be required to identify Celtic and arrange for Celtic to prepare and sign a written report and then turn over that report to Holladay. Had that been the scenario, and it is not, then any draft report prepared by Celtic would not have to be produced (even though the final report would be subject to the mandatory turnover provision).

But the Draft Report at issue here is not covered by the protection of Rule 26(b)(4)(B) because Celtic is not a testifying expert retained or specially employed to provide expert testimony in the case.

Under Royal Caribbean's view of draft documents, parties could immunize any document (whether prepared by an expert, an employee, or a third party) from being discovered by merely designating it as a draft. Indeed, any person or entity could effectively avoid all obligations to provide written discovery in a lawsuit, whether filed or threatened, by writing the word "draft" on all letters, memoranda, reports and other documents.

Because Celtic is not a testifying expert, its Draft Report to Royal Caribbean would be protected -- **if** the report meets the criteria of the work product doctrine. But Royal Caribbean skips over this critical requirement and proclaims that the document's "draft" status is independently sufficient to block discovery of it. The Undersigned is not aware of any legal authority which supports this view and Royal Caribbean has not called the Court's attention to any either. Thus, Royal Caribbean's approach comes full circle,

requiring the Undersigned to decide whether it sustained its burden of establishing work product protection for the Celtic Draft Report.

The Undersigned's decision is that Royal Caribbean has **not** met its burden.

As noted, it failed to provide affidavits or declarations. It merely submitted attorney rhetoric in a memorandum, announcing that it retained Celtic in anticipation of litigation. It did not adequately address the reality that it regularly used this engineering firm in connection with other projects not related to anticipated litigation. It similarly failed to sufficiently discuss its pre-incident retention of Celtic and Plaintiff's argument that the post-incident Draft Report is a follow-up to Celtic's continuation of its pre-incident activities.

Moreover, Royal Caribbean has not resolved the inconsistency of saying that Celtic was retained in anticipation of litigation in a project calling for an inspection of an attraction on another ship where no incident occurred.

And it has not at all commented about why the language of the Celtic Draft Report does not mention the incident, the injury or any topic relating to litigation.

Although the burden to establish the work product protection for the Celtic Draft Report is on Royal Caribbean, Holladay has made a compelling argument that Royal Caribbean likely had several business reasons arising in the ordinary course of business to investigate and test the Sky Pad's safety mechanisms and whether they were prone to failure. For example, Holladay says that Royal Caribbean's other motivations were to:

"(1) improve the overall performance of the Sky Pad; (2) protect future passengers from potential arm; and (3) avoid or minimize negative publicity in connection with the attraction's failures." [ECF No. 71, p. 4].

Assuming, for the sake of discussion, that Royal Caribbean based its post-incident decision to retain Celtic again for another Sky Pad project because of one or more of the reasons listed immediately above, an additional litigation preparation purpose would not change the result under the unique circumstances of this case. *Allied Irish Banks v. Bank of America*, 240 F.R.D. 96, 106 (S.D.N.Y. 2007) (work product protection "is not available for documents 'that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of litigation'")[3]; *Janicker v. George Washington University*, 94 F.R.D. 648, 650 (D.D.C. 1982) (committee report not entitled to work product protection because reports were prepared in the ordinary course of business); *Soeder v. General Dynamics Corp.*, 90 F.R.D. 253, 255 (D. Nev. 1980) (in-house report about crash did not qualify as a work product document); *cf. Durling v. Papa John's Int'l, Inc.*, No. 16 Civ. 3592, 2018 WL 557915, at *7 (S.D.N.Y. Jan. 24, 2018) (granting in part motion to compel after *in camera* review of documents and determining that documents are "generally business strategy documents addressing, for example, cost calculations and data, not anticipated litigation").

---

[3] The *Allied Irish Banks* Court ordered production of, among other documents, **drafts** of a report, because the materials were prepared in the ordinary course of business. *Id.* at 102.

17

Royal Caribbean has not met its burden of establishing that Celtic was retained in anticipation of litigation and that its Draft Report is entitled to work product protection. The Celtic Draft Report does not contain legal analyses or litigation strategies. To the contrary, it focuses on safety issues pinpointed as a result of the inspections and makes safety-recommendations. It appears to be the type of report which a cruise ship operator would have assigned in the ordinary course of business after an accident, regardless of whether litigation was anticipated. *See generally In Re Welspun Litigation*, No. 16-cv-6792, 2017 WL 10311206, at *3 (S.D.N.Y. October 31, 2017) (rejecting work product assertion and compelling production of documents involving testing of linen sheets, noting that the anticipation of possible litigation was insufficient and highlighting that a "business-related purpose for testing the sheets" existed); *see also In re Otal Invs. Ltd. v. Capital Bank Pub. Ltd. Co.*, No. 03 Civ. 4304, 2005 WL 1473925, at *1 (S.D.N.Y. June 22, 2005) (factual statement prepared following collision of boats not work product where "business reasons for obtaining a statement from their captains" would have compelled the report regardless of litigation); *Weinrib v. Winthrop-University Hospital*, No. 14-953, 2016 WL 1122033, at *6 (E.D.N.Y. March 22, 2016) (noting that a hospital may have multiple purposes for preparing a complaint database [i.e., to ensure efficient operations, patient satisfaction, quality control and proper compliance with statutory and regulatory requirements] and holding that party failed to meet its "heavy burden" of establishing work product doctrine because the complaint file at issue in a deposition was kept in the

ordinary course of business).

Accordingly, Royal Caribbean shall produce the document to Holladay on or before January 24, 2020.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on January 22, 2020.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All counsel of record